IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| **UNIYA SWAN-SULLIVAN, On Behalf of Herself and All Others Similarly Situated,** | ) | |
| ***Plaintiff,*** | ) | **CLASS AND COLLECTIVE ACTION** |
| **v.** | ) | **CASE NO. 1:21-cv-314** |
| **EAT DRINK HERE L.L.C. AND CHARLES A. HODGE D/B/A SOVEREIGN REMEDIES,** | ) | **JURY DEMAND** |
| ***Defendants*.** | ) | |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO APPROVE FAIR LABOR STANDARDS ACT SETTLEMENT AND TO VOLUNTARILY DISMISS RULE 23 CLASS CLAIMS**

Named Plaintiff Uniya Swan-Sullivan, on behalf of herself and the Opt-In Plaintiffs in this action (collectively "Plaintiffs"), submits this brief in support of her Unopposed Motion to Approve Fair Labor Standards Act Settlement ("FLSA") and to Voluntarily Dismiss Rule 23 Class Claims.

## I. SUMMARY OF CASE AND PROPOSED SETTLEMENT AGREEMENT

### A. Procedural Background.

Named Plaintiff brought this case as a collective action under the FLSA, 29 U.S.C. §§ 201, *et seq.*, and as a class action under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.* Named Plaintiff brought claims against Defendants Eat Drink Here L.L.C. and Charles A. Hodge (collectively, "Sovereign Remedies"), which own and operate a restaurant and bar establishment known as Sovereign Remedies in Asheville, North Carolina.

### B. Overview of Claims

The thrust of Plaintiffs' claim is that Sovereign Remedies violated the tip-credit provision

FLSA as a result of their common pay practices. Plaintiffs allege that Sovereign Remedies violated the FLSA by sharing tips earned by servers (who interact with and serve customers) with dishwashers, cooks, and other employees who do not interact with customers and do not earn tips. Sovereign Remedies has paid servers an hourly rate of less than the statutory $7.25 per hour minimum wage for regular hours (and $10.88 per hour for overtime hours) and purports to take a "tip credit," pursuant to 29 U.S.C. § 203(m), to meet the FLSA's minimum wage and overtime obligations.

Under certain conditions, the FLSA permits employers to pay tipped employees, such as Sovereign Remedies' servers, at a tipped hourly rate of at least $2.13 per hour (and $5.76 per hour for overtime hours), counting their tips toward the remaining minimum wage and overtime obligations. This is typically referred to as the "tip credit." The condition for taking the tip credit at issue here is that tipped employees paid a lower, tipped hourly rate must also be permitted to retain all of the tips they earn except those shared as part of a lawful tip pool. However, requiring tipped employees to participate in a tip pool in which their earned tips are improperly shared with employees who do not earn tips and do not interact with customers—as Plaintiffs allege Sovereign Remedies did—does not meet this condition. Thus, Sovereign Remedies allegedly improperly took the tip credit with respect to Sovereign Remedies' servers. Plaintiffs seek a recovery of wages equal to the amount of the difference between $7.25 (the minimum wage set forth in the FLSA if no tip credit is taken) and the hourly wage actually paid to her and those who have joined this case.

Plaintiffs also allege that the percentage of earned tips that Sovereign Remedies' requirement that servers share tips with these employees violated the NCWHA. Specifically, Plaintiffs allege that this practice lacked appropriate authorization under the NCWHA and constituted the withholding and diversion of wages for an improper purpose. Named Plaintiff

asserted this allegation on behalf of a putative class pursuant to Fed. R. Civ. P. 23. However, due to the parties' early efforts at resolution, certification of this claim pursuant to Fed. R. Civ. P. 23 was never sought.

Sovereign Remedies disputes any violation of the FLSA or NCWHA, the status of Defendant Hodge as an employer, and the collective and class treatment of the claims at issue. Were it not for the present settlement, Sovereign Remedies would have continued to litigate these claims, resulting in a delay in both the resolution and eventual payment to Plaintiffs, if any, of funds resulting from these claims.

**C. The Parties' Settlement Agreement**

Through the exchange of payroll and timekeeping data necessary to assess the potential value of Plaintiffs' claims followed by months of direct, arm's length negotiations between their counsel, the parties were able to reach agreement on an amount to resolve the Plaintiffs' FLSA and NCWHA claims and, ultimately, the written agreement presently before the Court for approval. The settlement provides for a recovery of wages and liquidated damages for the Plaintiffs allocated *pro rata* based on the damages calculated using their payroll and timekeeping data and an amount for Plaintiffs' attorneys' fees and expenses pursuant to the fee-shifting provision of the FLSA. The parties' written settlement agreement (attached as **Exhibit 1**) contains the following salient provisions:

- Payment of $62,000 to Plaintiffs to resolve their claims for unpaid wages and liquidated damages under the FLSA and NCWHA;
- Payment of $31,000 for attorneys' fees and expenses;
- Payment of $2,000 to Named Plaintiff as a service payment; and,
- Release of wage and tip claims against Sovereign Remedies and affiliated individuals and entities resulting from work at Sovereign Remedies.

As explained below, the settlement of this action on these terms represents a reasonable settlement of a *bona fide* dispute and the payment for attorneys' fees and expenses is reasonable.

The amount of each Plaintiff's recovery represents a compromise of the claims for unpaid wages, tips, and liquidated damages based on calculations using the payroll and timekeeping records Sovereign Remedies maintains for Plaintiffs. In other words, the Plaintiffs will receive their *pro rata* share of the compromised payment, based on their proportionate share of their maximum potential recovery at trial were they to succeed on all of their claims. The attorneys' fees and expenses incurred exceed the amount of the compromised payment, confirming that payment's reasonableness as well. Finally, the service payment sought here is in line with service payments approved in class and collective litigation by courts in the Fourth Circuit. Accordingly, the Plaintiffs move the Court for the approval of the parties' settlement agreement.

## II. ARGUMENT.

### A. This Court Should Approve the Parties' Settlement.

An FLSA collective action is not a class action—individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled. *See Digidio v. Crazy Horse Saloon and Restaurant*, 880 F.3d 135 (4th Cir. 2018). Thus, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt-in settlements, because absent class members are not bound by the case's outcome. *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972). Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Nonetheless, courts have held that settlement of FLSA claims, in order to effectuate a release, must be presented to the district court for review and determination whether the settlement is fair and reasonable. *In re: Dollar General Stores FLSA Litigation*, 5:09-MD1500, 2011 WL 3904609 *2 (E.D.N.C. Aug. 22, 2011); *Wagner*, 76 F.R.D. at 23. For the Court to approve a FLSA settlement, the Court must find that the litigation involves a *bona fide* dispute and that the proposed settlement is fair and equitable to all parties. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. And, the settlement agreement must contain an award of reasonable attorneys' fees. *Id.*; *see also Porter v. W. Side Rest.*, LLC, No. 13-1112-JAR-KGG, 2015 WL 685855, at *1 (D. Kan. Feb. 18, 2015) (citing *Peterson v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a *bona fide* dispute under the FLSA. *Lynn's Food Stores*, 679 F.2d at 1352-54. First, the court must be satisfied that the settlement was the product of "contested litigation." *Id*. at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties under the FLSA. *Id.*

Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms' length settlement as indicia of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Based upon the contested nature of this case and the quality of the settlement, Plaintiff respectfully submits that this Court should conclude that the parties' settlement is a reasonable arms-length resolution of a *bona fide* dispute in contested

litigation, and thus approve the settlement.

Unquestionably, the proposed settlement is the product of contested litigation. The Parties have a number of disputes, including, but not limited to: (1) whether Sovereign remedies violated the FLSA or NCWHA; (2) whether Plaintiffs can show that Sovereign Remedies' conduct was willful and, as a result, whether the two-year or three-year FLSA statute of limitations applies; (3) whether Sovereign Remedies can show that it acted in good faith and with a reasonable belief that its conduct did not violate the law and, as a result, whether liquidated damages should be reduced or not awarded at all; (4) whether Defendant Hodge is an employer under the FLSA and NCWHA; (5) whether the Plaintiffs should be permitted to proceed through discovery and trial collectively under the FLSA (*i.e.*, whether decertification of the FLSA collective action is appropriate); (6) whether Named Plaintiff can make the requisite showing under Fed. R. Civ. P. 23 that class certification is appropriate; and (7) the calculation of damages, if any. Each of these issues, as well as others, would have been the subject of extensive discovery and motion practice absent the parties' settlement.

The parties' settlement is the product of arm's length negotiations by experienced counsel and provides meaningful monetary relief to Plaintiffs, who chose to participate. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution on the merits. For Sovereign Remedies, the resolution of Plaintiffs claims provided certainty and reduced the expense associated with litigating Plaintiffs' claims. The parties recognized the risk and uncertainty both sides faced, ensured they were armed with the data necessary to assess the value of Plaintiffs' claims, and undertook focused, direct negotiations through their counsel.

Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA

case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

**B. The Attorneys' Fees and Expenses Requested are Reasonable and Warrant this Court's Approval.**

The FLSA allows for a plaintiff to recover his/her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Lane v. Ko-Me, LLC*, Case, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011). Similarly, the FLSA provides for the reimbursement of costs. 29 U.S.C. § 216(b). Awards of reasonable out-of-pocket costs incurred by counsel are routinely approved by courts as part of FLSA settlements. *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 369 (D. Md. 2016).

Pursuant to the Agreement, Plaintiffs would be paid $31,000 for their attorneys' fees and costs. To date, Plaintiffs' counsel have incurred $34,076.50 in fees and $2,344.55 in costs. The actual amount agreed to as part of the Parties' settlement agreement, subject to this Court's approval, represents a reduction of from the fees and costs actually incurred by Plaintiffs' counsel in this litigation. For the reasons discussed below, these amounts are reasonable and should be approved.

The FLSA provides that in a collective action, a court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. 216(b). The Fourth Circuit

has prescribed a three-step process for determining an appropriate fee award: (1) calculation of a lodestar amount by multiplying the number of attorney hours reasonable expended on the litigation by a reasonable rate; (2) subtraction of any fees included in the amount for hours spent on unsuccessful claims unrelated to the successful ones; and (3) further adjustment to the resulting total based on a plaintiff's degree of success. *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 675-76 (4th Cir. 2015) (citing *McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013). Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar. *Robinson v. Equifax Info. Servs. LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

The Court's assessment as to the reasonableness of the hours and rates claimed in the lodestar calculation is guided by the twelve *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

The *Johnson* factors favor approval of the agreed-upon, compromised payment of attorneys' fees and expenses:

**Factor (1).** In this case, Plaintiffs' counsel devoted significant time to: (1) pre-suit

investigation of the claims in this case; (2) preparing the pleadings; (3) interviewing Plaintiffs regarding their claims; (4) negotiating the terms of the settlement; and (5) preparing the settlement documents and related pleadings. *See* Declaration of David W. Garrison ("Garrison Decl.") at ¶ 4. This resulted in 98.5 hours of legal work that attorneys and support staff necessarily billed, incurring total fees of $34,076.50. *Id.* ¶ 7. This work also reflects appropriate staffing of this matter, delegating tasks to Plaintiffs' local counsel and to less senior attorneys and support staff where appropriate. *Id.* ¶ 13.

**Factors (2) – (4) and (7).** The issues in this action were complex. This action involved statutory claims under both federal and state law, as well as a unique procedural method for the assertion of claims by individual Plaintiffs under the FLSA. This necessitated the filing of individual consent forms by each Plaintiff in order to toll the running of the statute of limitations. This necessitated that actions be taken quickly to preserve the Plaintiffs' claims.

**Factors (5) – (6), (9), (11) and (12).** Plaintiffs' counsel undertook this representation on a contingency basis without any expectation of compensation from their clients absent a recovery on their behalf and advanced all expenses necessary to pursue those claims. *Id.* ¶ 15. Named Plaintiff was not a pre-existing client of Plaintiffs' counsel, and Plaintiffs' counsel undertook this representation without any expectation of representing Named Plaintiff in any other matters. *Id.*

Plaintiffs' attorneys billed for their work on this matter at reasonable hourly rates approved by federal courts in similar litigation. *Id.* ¶ 11. Plaintiffs' counsel have extensive experience in class and collective wage-and-hour litigation, *id.* ¶ 1, and have been appointed class counsel in wage-and-hour class and collective cases in federal district courts around the country, *id.* The rate structure employed by lead counsel at Barrett Johnston Martin & Garrison, LLC ("BJMG") was approved by various federal courts in which the firm regularly practices. *Id.* ¶¶ 9 – 11.

This Court and other District of North Carolina courts have approved as reasonable rates that are excess of the hourly rates charged by Plaintiffs' Counsel. *See, e.g.*, *Rehberg v. Flowers Banking Co. of Jamestown*, No. 3:12-cv-596 (W.D.N.C. June 30, 2017) (Doc. No. 250) (approving hourly rates ranging from $375 (associate) to $975 (partner)); *Velasquez-Monterrosa v. Mi Casita Restaurants*, 2016 WL 1703351 (E.D.N.C. Sept. 26, 2017) (approving $595 hourly rate). Furthermore, in FLSA cases, "courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery." *Vasquez v. Ranieri Cheese Corp.*, 2011 WL 554695, at *4 (E.D.N.Y. February 7, 2011); *Spencer v. Cent. Services, LLC*, 2012 WL 142978 (D. Md. Jan. 13, 2012) ($11,500 in damages; $56,430 in attorney fees). Of course, the compromised payment for fees and costs here is proportionate to the recovery of the Plaintiffs.

**Factor (8).** Despite all of this complexity and other risks associated with this action, Plaintiffs' counsel successfully preserved the Plaintiffs' claims against Sovereign Remedies and ultimately succeeded in negotiating a settlement for slightly more than the entire amount of unpaid wages at issue. *Id.* ¶ 5. In such circumstances, this result can only reasonably be characterized as excellent. *Id.* ¶ 5. Plaintiffs have not failed on any claim and, thus, no subtraction of fees is warranted. And, it follows that Plaintiffs' counsel does not seek any additional adjustment to the lodestar based on the degree of success obtained on behalf of Plaintiffs, despite the excellent recovery for the Plaintiffs.

The negotiated payment of $31,000 also includes the reimbursement of $2,344.55 in litigation costs and expenses advanced by Plaintiffs' counsel. Reimbursement of litigation costs and expenses is separate from the Plaintiffs' recovery. "Attorneys may be compensated for litigation expenses 'reasonably incurred by counsel in prosecuting a class action.'" *In Re Wachovia Corp.*, No. 3:09-cv-262, 2011 WL 5037183, at *7 (W.D.N.C. Oct. 24, 2011); *see also Thaxton v.*

*Bojangles' Restaurants, Inc.*, No. 318CV00665MOCDCK, 2020 WL 6997891, at *3 (W.D.N.C. Mar. 4, 2020) (awarding $65,000 in costs); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md 2014) (reimbursable costs include "reasonable out-of-pocket expenses that are normally charged by an attorney to a fee-paying client," including costs associated with filings and travel). Here, these reimbursable costs are included in the $31,000 and represent a modest amount.

In short, considering the *Johnson* factors and the analysis of fees and expenses required by the Fourth Circuit, the agreed upon payment of $31,000 should be found to be reasonable and the settlement approved.

**C. The $2,000 Service Payment to Named Plaintiff is Appropriate and Should be Approved.**

Named Plaintiff initiated this action, assisted Plaintiffs' counsel in investigating the claims, helped insure that similarly situated employees were aware of the action, and participated at every phase of the litigation including actively assisting Plaintiffs' counsel in the negotiation of a resolution. Garrison Decl. at ¶ 16. Absent these efforts on behalf of the Plaintiffs, this favorable settlement would not have been possible. *Id.* This supports approval of the modest service payment, which is comfortably within or below the range of such awards approved by this and other courts in the Fourth Circuit.[1]

---

[1] *See, e.g.*, *Hollis v. Valley Proteins Inc.*, No. 3:21-cv-00112-FDW-DSC, 2022 WL 703606, at *8 (W.D.N.C. Mar. 8, 2022) (approving service awards of $100,000 and $50,000 to named plaintiffs and a total of $214,000—nearly 10% of aggregate settlement amount—for named and opt-in plaintiffs); *Myers v. Loomis Armored US, LLC*, No. 3:18-cv-00532-FDW-DSC, 2020 WL 1815902, at *7-*8 (W.D.N.C. Apr. 9, 2020) (approving service awards ranging from $2,500 to $50,000 totaling $114,500—more than 7.5% of the aggregate settlement amount—for named and opt-in plaintiffs); *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19-CV-1193, 2022 WL 2527824, at *6 (M.D.N.C. July 7, 2022) (approving $7,500 service payment to named plaintiff); *Ford v. Cardinal Innovations Healthcare Sols.*, No. 1:20-CV-736, 2022 WL 558376, at *5 (M.D.N.C. Jan. 21, 2022) (approving $10,000 service payment to named plaintiff); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approving $10,000 service payment to named plaintiff).

### D. Dismissal of Named Plaintiff's Rule 23 Claims is Appropriate.

As noted above, Named Plaintiff also asserted NCWHA claims on a class basis. Ultimately, this case never reached a procedural stage to address the potential class claims. Since class certification was never sought, no class was ever certified, and no putative class members received notice of this action, dismissal of the Rule 23 class allegations without prejudice is appropriate. Fed. R. Civ. P. 23(e) (requiring notice only where a class has been certified or is proposed to be certified for settlement purposes).

## III. CONCLUSION

For the reasons set forth above, the Court should approve the parties' settlement agreement (including the agreed-upon service payment and payment of attorneys' fees and costs) as reasonable and dismiss the Rule 23 allegations.

Dated: September 13, 2022

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (TN Bar No. 24968)***
**JOSHUA A. FRANK (TN Bar No. 33294)***
BARRETT JOHNSTON MARTIN & GARRISON, LLC
PHILIPS PLAZA
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

**NARENDRA KUMAR GHOSH**
Patterson Harkavy LLP
100 Europa Dr., Suite 250
Chapel Hill, NC 27517
919-942-5200
919-942-5256 (fax)
nghosh@pathlaw.com

*Admitted Pro Hac Vice**

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this *Memorandum in Support of Unopposed Motion to Approve Fair Labor Standards Act Settlement and to Voluntarily Dismiss Rule 23 Class Claims* was filed electronically with the Clerk's office by using the CM/ECF system and served on the following counsel for Defendants as listed below on September 13, 2022:

**ZEBULON D. ANDERSON**
**KERRY A. SHAD**
**SHAMEKA C. ROLLA**
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.
PO Box 2611
2500 Wachovia Capitol Center
Raleigh, NC 27602
919-821-6735
919-821-6800 (fax)
zanderson@smithlaw.com
kshad@smithlaw.com
srolla@smithlaw.com

*Attorneys for Defendant*

/s/ David W. Garrison
DAVID W. GARRISON
**BARRETT JOHNSTON**
**MARTIN & GARRISON, LLC**